UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONTAE PHILLIPS,

                     Petitioner,                     Case No. 1:16-cv-599

v.                                          Honorable Janet T. Neff

CARMEN D. PALMER,

                     Respondent.

_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner is incarcerated in the Michigan Reformatory.  He was convicted in the Wayne County Circuit Court of possession of less than 25 grams of heroin, MICH. COMP. LAWS § 333.7403(2)(a)(v); felon in possession of a firearm, MICH. COMP. LAWS § 750.225f; and possession of a firearm during the commission of a felony (felony-firearm), second offense, MICH. COMP. LAWS § 750.227b.  On September 6, 2013, the trial court sentenced him as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent prison terms of 42 months to 15 years for his heroin and felon in possession of a firearm convictions, and a consecutive five-year term for his felony-firearm conviction.

The following summary of the trial proceedings was provided in Petitioner's brief on appeal in the Michigan Court of Appeals:

Trial commenced on August 21, 2013, and a jury was selected and preliminary instructions given. (JT I p. 1-77.)  The prosecution gave her opening statement, as did the defense. (JT p. 77-85.)  The first prosecutorial witness, Jeffrey Pacholski, a Detroit Police Officer, testified that on May 2, 2013, he participated in a search warrant at 5338 Baldwin Street, Detroit. (JT I p. 87.)  He was in a raid van with police car backup.  When the raid team exited the van, Pacholski claims he observed the Defendant run into 5338 Baldwin and slam the door. (JT I p. 89.)  The raid team proceeded to force entry and secure the house, and according to Pacholski, the door had a drop bar securing it from the inside. (JT I p. 90.)  As Pasholski entered the dining room, he testified he heard a shot fired somewhere in the house. (JT I p. 91.)  He observed an AK-47 assault rifle propped in the arched doorway near the basement stairs, and claimed he smelled gunpowder and smoke.  Pacholski proceeded downstairs with Officers Sloan, Hopp, and Zuniga. (JT I p. 93.)  They reportedly found Defendant in the basement by himself. (JT I p. 94.)

According to Pacholski, 5338 Baldwin was a typical dope house in Detroit with space and furnishings; it did not look like anyone lived there. (JT I p. 99.)  On cross-exam, Pasholski noted that he was not sure if the Defendant ever saw the police before he entered the house and shut the front door. (JT I p. 102.)  According to Pacholski, another AK-47 type weapon was found in the basement but he did not know if a shell casing was recovered.  He did not know if the police tried to find fingerprints on that weapon. (JT I p. 104.)

Officer Jason Sloan took the stand. He told the jury that as the raid van approached the house at 5338 Baldwin he observed two men on the porch, the Defendant and another man who ran off. (JT I, p. 113.) As he entered the house he heard a sound that "could have been a gunshot" but was "muffled." (JT I p. 117.) He claimed to smell gunpowder in the air near the basement steps. He went down [to] the basement and told the jury he saw a black rifle in the middle of the floor. (JT I p. 120.) At the back of the basement room where the rifle was found, there was a second room full of debris, and according to Sloan, the Defendant was found hiding there under a table. (JT I p. 121.) They handcuffed Defendant, who reportedly said, "I wasn't shooting at y'all, it fell down the stairs and went off." (JT I p. 122.) The weapon was admitted into evidence. Sloan was the officer who decided not to look for fingerprints on the weapon. He admitted he does not know if Defendant fired the gun. (JT I p. 141.)

Officer Ronald Hopp testified next. He entered the house with the other officers. The Defendant was being handcuffed as he approached. He alleged that the Defendant was wearing a bulletproof vest. (JT I p. 150.) Next Hopp looked for contraband in the house, and told the jury he found 120 Ziploc bags of marijuana and two unloaded handgun magazines in a bedroom. (JT I p. 151.)

Officer James Wiencek was the affiant on the search warrant and was responsible for all evidence. (JT I p. 162.) Wiencek also observed Defendant run into the house. (JT I p. 168.) He never saw Defendant Phillips in the basement, but only observed him after he was handcuffed and upstairs. (JT I p. 175.) He observed the bags of suspected marijuana and bags with a white powder. (JT I p. 176.) Wiencek assisted in uncuffing the Defendant so that body armor could be removed and placed in evidence. (JT I p. 181.) Wiencek took photos of everything and he testified he found everything laid out neatly as in the photos. (JT I p. 184.) He then went though the photos that were admitted and explained what was in them - including a photo ID of Defendant reportedly found with the controlled substances. (JT I p. 185-191.)

On cross-examination, Weincek admitted that Defendant Phillips did not meet the description of the man described in the search warrant as having sold narcotics. (JT I p. 196.) He also admitted he moved some pieces of evidence around before photographing them, and that that [sic] the neatly laid out ID of the Defendant contrasted with the general disarray in the house. (JT I p. 201.) He also admitted that he was not the one who first observed the ID or narcotics, but other officers showed it to him. (JT I p. 204.)

On the second day of trial, stipulations were entered indicating that the suspected narcotics were examined by a forensic scientist and marijuana was found in one bag (.48 grams) as well as heroin (.02 grams). Both rifles were similarly test

-3-

fired and found to be operational.  (JT II, p. 5-6.)  Finally, it was stipulated that
Defendant was a felon.

  The people rested and Defendant moved for a directed verdict, which was
denied.  Mr. Phillips took the stand.  (JT II 8-11.)  He told the jury that on May 2,
2013, he walked to 5338 Baldwin to visit an old friend who lived at that address.
Contrary to police testimony, he was opening the door and entering the house when
the police arrived.  (JT II p. 13.)  Mr. Phillips identified his Prison ID card and his
Quiznos work ID card from the Detroit Medical Center, and told the jury that the
police officers took those out of his pocket when they arrested him and laid them
next to the narcotics to photograph the items together.  (JT II p. 14.)

  Mr. Phillips also explained that after the police arrested him, they made him
put on the bulletproof vest and photographed him that way.  Defendant was not
wearing the vest when the police arrived.  He thinks they may have found the vest
in the house. (JT II p. 16.)  Mr. Phillips explained he entered the house and called
for his friend Eric, who did not seem to be there, although Defendant knew his sister
lived upstairs.  Defendant was alarmed by the banging on the door caused by the
police forcing it open.  Mr. Phillips did not see the guns or drugs in the house at any
time.

  On cross-examination, Defendant denied that he put a drop bar on the door
after entering, although no one else was apparently in the house.  (JT II p. 20.)
Defendant ran down the [to] the basement, and admitted he heard a gun go off.
(JT II p. 22.)  Defendant explained that the last time he visited that house, a couple
of months prior, it was not full of debris and someone was living there.  (JT II p. 26.)

  Defendant re-called Officer Weincek, who admitted he did not take a photo
of the alleged drop-bar and could not prove there had been such a bar to lock the
door.  (JT II p. 28.)

  Closing arguments were given and the jury was instructed.  (JT II p. 30-83.)
The jury returned a while later that day and explained they had come to agreement
on some counts but could not agree on one.  Judge Callahan told them to continue
deliberating.

  The next morning the jury returned their verdicts with the Judge's approval:
they could not come to a verdict as to count I, possession of marijuana, but they
found Defendant guilty of possession of heroin, possession of a firearm by a felon
and felony-firearm.  (JT III p. 3.)

(Defendant-Appellant's Brief on Appeal, ECF No. 1-1, PageID.31-34.)

On direct appeal, Petitioner claimed that he was denied his Sixth Amendment right to the effective assistance of counsel when his trial counsel failed to cross-examine witnesses regarding the lack of testing for gunpowder residue.  Petitioner also filed a motion for a *Ginther* hearing, which was denied by the Michigan Court of Appeals.  In an unpublished opinion issued on December 16, 2014, the court of appeals rejected Petitioner's claim and affirmed his conviction. Petitioner raised the same claim in his application for leave to appeal in the Michigan Supreme Court.  The state supreme court denied leave to appeal on May 28, 2015.

Petitioner now raises the following claim of ineffective assistance of counsel as his sole ground for habeas corpus relief:

> DEFENDANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE UNITED STATES CONSTITUTION, AMEND. VI; AND THE MICHIGAN CONSTITUTION, 1963, ART. 1, SEC. 20, WHERE HIS TRIAL ATTORNEY FAILED TO CROSS-EXAMINE WITNESSES REGARDING THE LACK OF TESTING FOR GUNPOWDER RESIDUE.

(Pet., ECF No. 1, PageID.3-4.)

### Standard of Review

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined

by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376

(quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case." *Williams*, 529 U.S. at 407.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

## Discussion

In his application for habeas corpus relief, Petitioner contends that trial counsel was ineffective when she failed to cross-examine witnesses regarding the lack of testing for gunpowder residue.  Petitioner argues that such a line of questioning "could *only have helped* show reasonable doubt, and yet his trial counsel did not pursue it." (Br. in Support, ECF No. 2, Page.ID82) (emphasis in original.)  He further asserts that had the lack of testing for gunpowder residue and fingerprints been properly argued, he could have received a decrease in his sentencing range.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)).  Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123

-8-

(2009)).  In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Applying the state-law equivalent of the *Strickland* standard, the Michigan Court of Appeals found that Petitioner was not denied the effective assistance of counsel, stating:

> "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice."  *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.  "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy."  *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). This Court does not substitute its judgment for that of defense counsel on matters concerning trial strategy.  *Id.*

> As a preliminary matter, the record does not support defendant's claim that defense counsel failed to pursue any argument related to the lack of fingerprinting and gunpowder residue testing.  Although defense counsel did not specifically ask the testifying officers why they did not perform a fingerprint analysis on the recovered evidence, she did ask each officer if they performed a fingerprint analysis and whether it was their responsibility to send in the evidence for such an analysis. Likewise, while defense counsel did not ask each officer why they did not obtain gunpowder residue testing, she specifically asked Officer James Wiencek, the officer in charge, if he performed any gunpowder testing.  Furthermore, defense counsel expressly addressed the fact that the police did not perform any fingerprint or gunpowder testing during her closing argument.  Thus, defendant's claim lacks merit.

> Moreover, defendant has not shown that his defense attorney's performance fell below an objective standard of reasonableness under prevailing professional norms. *Nix*, 301 Mich App at 207.  "The questioning of witnesses is presumed to be a matter of trial strategy." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).  There is nothing in the record to rebut the presumption that defense counsel's manner of cross-examining the witnesses was a matter of trial strategy. *Payne*, 285 Mich App at 190.  For example, defense counsel may have determined that it was more advantageous to direct the jury's attention to gaps in the officers' investigation instead of eliciting testimony regarding the specific reasons why the officers did not perform the fingerprint and gunpowder residue testing.  Likewise, this Court has previously held that a defense attorney's failure to further

-9-

cross-examine a witness on a particular topic or "emphasize [a] matter more strongly to the jury" did not constitute ineffective assistance of counsel. *Petri*, 279 Mich App at 414. Therefore, defense counsel's failure to specifically question the witnesses regarding why they did not perform fingerprint and gunpowder residue testing did not fall below an objective standard of reasonableness.

In addition, the record does not indicate that there is a reasonable probability that defense counsel's deficient performance prejudiced defendant, such that the outcome of the proceeding would have been different but for defense counsel's errors. *Nix*, 301 Mich App at 207. Defense counsel did in fact argue, in her closing argument and then again during sentencing proceedings, that there was insufficient evidence to connect defendant to the illegal activities based on the lack of fingerprint and gunpowder residue testing. Thus, there is no reasonable probability that defendant was prejudiced. Moreover, the record contains substantial support for each of defendant's convictions. Defendant, who was standing on the porch of the house at the time police arrived, rushed inside the house when he saw the officers approaching; officers heard a gunshot upon entering the house; officers located defendant hiding in the house near evidence of a recently fired rifle; defendant was the only person found inside the house; defendant made inculpatory statements upon being discovered by the officers; officers found photo identification for defendant, and no one else, in the house; and drugs and weapons were found in the house. Therefore, defendant has failed to demonstrate that he was denied the effective assistance of counsel.[2]

[1] *See People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] The prosecution raises arguments relating to the scoring of offense variable (OV) 19. However, defendant does not challenge the scoring of OV 19 or defense counsel's failure to object to the scoring of OV 19. Therefore, we do not address this issue.

The decision of the Michigan Court of Appeals clearly was eminently reasonable. As set forth in detail by the court of appeals, counsel both cross-examined the witnesses about whether they conducted fingerprinting and gunpowder residue testing and argued during closing arguments and at the sentencing proceedings that there was insufficient evidence to support Petitioner's conviction given the lack of fingerprint and gunpowder residue testing. The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the

petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Petitioner has failed to offer any evidence whatsoever to rebut the findings of the Michigan Court of Appeals.

Petitioner also has failed to overcome the presumption that the challenged conduct of counsel was a matter of strategy. "Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (internal quotation marks omitted); *see also United States v. Steele*, 727 F.2d 580, 591 (6th Cir. 1984) (holding that cross-examination "falls within the area of trial tactics and strategy that should not be subjected to second guessing and hindsight" by the court). "[T]he Confrontation Clause guarantees an opportunity for effective cross–examination, not cross–examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted). Moreover, disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance. *Strickland*, 466 U.S. at 689. Consequently, Petitioner's disagreement with counsel over the form of her questions or the extent of her cross-examination concerning gunpowder residue testing does not render counsel's performance deficient. Because Petitioner fails to satisfy the first prong of the *Strickland* standard, this Court need not reach prejudice. *Id.* at 697.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:  September 19, 2016            /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge